IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TASHUBI,[1]

                    Plaintiff,

        v.

ANDREW M. SAUL, Commissioner of Social
Security,

                    Defendant.

Case No. 6:19-cv-00251-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

      Tashubi ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear

Plaintiff's appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions

of 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's

decision and remands for an award of benefits.

---

[1] Plaintiff is known by only one name, Tashubi.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was thirty-seven years old on August 13, 2015, the day she protectively filed her SSI application.[2] (Tr. 15, 67, 79, 163.) Plaintiff completed two years of college coursework and has no past work experience. (Tr. 25, 191.) In her SSI application, Plaintiff alleges disability due

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which [s]he filed h[er] application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted).

to bipolar disorder, social phobia, posttraumatic stress disorder ("PTSD"), and fibromyalgia. (Tr. 67, 79.)

The Commissioner denied Plaintiff's SSI application initially and upon reconsideration, and on December 22, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 108-10.) Plaintiff, a medical expert ("ME"), and a vocational expert ("VE") appeared and testified at a hearing held on November 9, 2017. (Tr. 32-66.) On February 15, 2018, the ALJ issued a written decision denying Plaintiff's SSI application. (Tr. 12-31.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

PAGE 3 – OPINION AND ORDER

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 12-31.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 13, 2015, the day she filed her SSI application. (Tr. 17.) Plaintiff worked after the application date, but the ALJ found this work activity "did not rise to the level of substantial gainful activity." (Tr. 17.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[D]epressive disorder, personality disorder, anxiety, cannabis use disorder, and bipolar disorder." (Tr. 17.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 18.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," subject to these nonexertional limitations: (1) Plaintiff "can understand, remember and carry out only short and simple instructions," (2) Plaintiff "can only make simple work-related judgments and decisions," (3) Plaintiff "can have no more than frequent interactive contact with the public, coworkers, and supervisors," and (4) Plaintiff "can have no more than occasional changes in a routine work setting." (Tr. 20.) At step four, the ALJ concluded that Plaintiff "has no past relevant work" experience. (Tr. 25.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the

national economy that she could perform, including work as a cleaner/housekeeper, assembler small products II, and photo copying machine operator. (Tr. 26.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to: (1) provide specific, clear and convincing reasons for discounting her testimony; (2) provide germane reasons for discounting the opinions of her treating licensed clinical social worker ("LCSW"), Sarah McDonald ("McDonald"), and treating psychiatric-mental health nurse practitioner ("PMHNP"), Amy Patrick ("Patrick"); (3) provide legally sufficient reasons for discounting the opinion of medical expert William Weiss, PhD; and (4) provide germane reasons for discounting the lay witness testimony of her stepparents, Kirk H. and Lilly C.[3]

As explained below, the Commissioner's decision is based on harmful legal error and not supported by substantial evidence, and therefore the Court reverses the Commissioner's decision.

## I.   PLAINTIFF'S SYMPTOM TESTIMONY

### A.   Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons

---

[3] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party's family members.

for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and quotation marks omitted).

Under Ninth Circuit case law, clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007), and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.    Analysis

In this case, there is no evidence of malingering and the ALJ determined that Plaintiff has provided objective medical evidence of underlying impairments which might reasonably produce some of the symptoms alleged. (*See* Tr. 21, reflecting that the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.") The ALJ was therefore required to provide clear and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ failed to meet that standard here.

### 1.    Effective Treatment

The ALJ discounted Plaintiff's testimony that she was "unable to work due to the severity of her psychological symptoms in combination with pain." (Tr. 24.) In making this finding, the ALJ found Plaintiff's testimony was not supported by the record, noting that: (1) Plaintiff was "positively responsive to medication;" and (2) Plaintiff "functions well when maintaining

compliance with medication and therapy such that she is able to maintain a job and live on her own in an apartment." (Tr. 25.) An ALJ may discount a claimant's testimony based on effective treatment. *See Bettis v. Colvin*, 649 F. App'x 390, 391 (9th Cir. 2016) (holding that the ALJ met the clear and convincing reasons standard, and stating that the ALJ appropriately discounted the claimant's testimony on the ground that his "condition improved with treatment," because "'[i]mpairments that can be controlled effectively with [treatment] are not disabling'") (citation omitted). Here, however, substantial evidence does not support the ALJ's finding.

As an initial matter, the Court acknowledges that Plaintiff responded positively to medication, as she did not experience manic episodes after July 2015 and was able to work part-time starting in October 2015. (*Cf.* Tr. 249-60, 530, describing Plaintiff's manic episodes in June and July 2015, including getting on a bus topless and pouring rubbing alcohol on her car; *see also* Tr. 523, an October 26, 2015 counseling note confirming Plaintiff had been hired at Addus.) However, Plaintiff does not "function well," as the ALJ suggests, because Plaintiff continued to experience high levels of anxiety even after starting part-time work and she required assistance to complete daily tasks. (*See* Tr. 908, a February 1, 2016 progress note explaining counselor's recommendation that Plaintiff participate in services to "increase her ability to effectively manage high and low mood swings and severe anxiety" so she can "perform day to day living situations and handle stress effectively"; Tr. 765, a February 11, 2016 counseling note showing an increase in Plaintiff's anxiety and suicidal ideation; Tr. 1059, a July 28, 2016 counseling report noting "[l]eaving home is getting harder" for Plaintiff to do; Tr. 1069, a September 26, 2016 counseling report noting Plaintiff experiences "anxiety around people"; Tr. 1095, a March 16, 2017 counseling report noting that Plaintiff feels "anxious about getting daily tasks done" but was "able to complete [them] with [McDonald's] assistance.") Given these reports, substantial

evidence does not support the ALJ's finding that Plaintiff's severe impairments were effectively controlled by treatment during the relevant time period.[4]

As to the ALJ's finding that Plaintiff was "able to maintain a job and live on her own in an apartment," the ALJ fails to explain how these activities contradict Plaintiff's testimony. Plaintiff never claimed she is completely unable to work or live on her own, in fact, she testified that she works nineteen and a half hours a week and lives alone. (*See* Tr. 38-39, 43.) However, Plaintiff also testified that she believes an increase in her work hours would negatively impact her health by causing her anxiety to increase and preventing her from "cop[ing] with [her] own household duties," and that she receives assistance in order to live alone. (*See* Tr. 43.) The record supports Plaintiff's testimony. Although Plaintiff worked part-time, she also experienced significant anxiety, and completed her job with accommodations provided by her employer, vocational counselors, and Laurel Hill Center. (*See* Tr. 564, an October 30, 2015 medical note explaining she is more organized at work with help from her employer; Tr. 1116, a November 23, 2015 treatment note where Plaintiff describes that she is working part-time, but is "uncertain for how much longer" as her mental symptoms are "troubleling (sic) and persisting"; Tr. 1118, a December 15, 2015 medical record noting that Plaintiff works 17 hours a week which is manageable with "some accommodation by employer"; Tr. 949, a January 28, 2016 medical record noting Plaintiff's increased anxiety, and a recommendation that Plaintiff "not spread herself too thin [with] work demands"; Tr. 1128, a February 8, 2016 report where Plaintiff is noted to manage her part-time schedule "most of the time with extra support from office staff";

---

[4] The relevant time period is the date Plaintiff filed her SSI application, August 13, 2015, and thereafter. *See, e.g.*, *Maxwell v. Berryhill*, No. 17-cv-05042, 2017 WL 5952680, at *2 & n.2 (W.D. Wash. Dec. 1, 2017) (explaining that "the relevant time period in this matter . . . is the date plaintiff filed his application for SSI benefits . . . and thereafter," because a claimant "is only eligible to receive SSI benefits beginning the month following the month in which his application for such benefits was filed").

Tr. 1132-33, a March 21, 2016 medical note explaining Plaintiff is "able to [manage] a part time work schedule with REcovery (sic) Specialist support" and "accommodations from employer.") Plaintiff's continuing anxiety and need for accommodations to complete part-time work support her testimony that an increase in work would increase her anxiety and she could not function.

As to Plaintiff's ability to live independently, although the ALJ correctly notes that Plaintiff eventually graduated from Supported Housing in 2017, the ALJ fails to acknowledge that during the relevant period Plaintiff lived alone with support, including receiving a renter's assistant grant and receiving assistance applying for housing and speaking with the property manager to discuss issues with paying rent. (*See* Tr. 43, Tr. 879-80, 882-884, 887-90, 892, 894, a series of records from Supported Housing from March 23, 2016 through February 3, 2017 which describe the assistance Plaintiff received related to housing.)

As a final note, even if Plaintiff performed part-time work as a caregiver, only the ability to sustain full-time work is inconsistent with a finding of disability. *See* 20 C.F.R. § 416.945 ("[The RFC] is the most [a claimant] can still do despite [his] limitations."); SSR 96-8p, 1996 WL 374184, at *1 (in formulating the RFC, the ALJ must assess "an individual's ability to do sustained work-related physical and mental activities . . . 8 hours a day, for 5 days a week"). Overall, substantial evidence in the record does not support the ALJ's finding that Plaintiff's impairments were effectively treated, nor was her ability to work part-time and live independently a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

### 2.    Daily Activities

Next, the ALJ discounted Plaintiff's testimony that she struggles to work part-time, on the ground that it is inconsistent with her daily activities. (Tr. 25.) In support of this finding, the ALJ noted that Plaintiff is: (1) "capable of managing personal care, cooking, shopping, and

driving when she is motivated to do so," (2) lives on her own, and (3) "maintains employment as a personal care worker." (Tr. 25.)

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165. Again, the activities the ALJ cites do not contradict Plaintiff's testimony about the severity of her mental health symptoms. As discussed above, Plaintiff never testified that she is unable to perform activities of daily living, live alone, or maintain employment. Her testimony is that an increase in work hours would cause an increase in her mental health symptoms. (*See* Tr. 38-39, 43.) Along with the reasons discussed above, Plaintiff's testimony is supported by additional medical providers who noted continued difficulties with her mental health symptoms even when Plaintiff worked part-time. (*See* Tr. 566-67, a November 3, 2015 treatment note encouraging Plaintiff to "avoid too many clients" because of issues with travel planning, and noting that Plaintiff only receives limited work support from Laurel Hill Center, but work "support [is] needed"; Tr. 778, a May 19, 2016 medical report where Plaintiff feels "some kind of 'presence'" when alone in her apartment, but knows no one is there; Tr. 1055, a July 1, 2016 report where Plaintiff reports a desire to continue working on "[u]nusual thoughts and experiences" and "fear of people"; Tr. 748, a July 21, 2016 report noting Plaintiff is "having difficulties in the community"; Tr. 1075, a November 1, 2016 treatment note where Plaintiff explains that she felt better not working full time, and is "waiting for SS" (social security) which will "allow her to cut some work hours so that she can continue to work through severe PTSD and Bi-polar symptoms.")

The ALJ failed to explain how Plaintiff's activities undermine her testimony regarding her ability to work more than part-time. *See Fritz v. Berryhill*, 685 F. App'x 585, 586 (9th Cir. 2017) (holding that the ALJ failed to meet the clear and convincing reasons standard and noting

that the ALJ "did not explain how" certain evidence "impacted [the claimant's] credibility"). Accordingly, the ALJ erred in discounting Plaintiff's testimony based on her daily activities.

### 3. Objective Medical Evidence

Finally, the ALJ discounted Plaintiff's testimony on the ground that it was inconsistent with the objective medical evidence. (*See* Tr. 21-25; stating that Plaintiff's symptoms "are not entirely consistent with the medical evidence and other evidence in the record," summarizing the objective medical evidence, and concluding that Plaintiff's mental health allegations were "not consistent with the evidence . . . to the extent . . . [she] is precluded from performing all work related activity" and her pain was "completely inconsistent with nerve condition studies, physical examinations, and imaging"; *see also* Def.'s Br. at 4-5 agreeing with the ALJ's determination that "medical findings do not support the extent of limitations [Plaintiff] alleged" (internal citations omitted).)

As discussed above, the ALJ erred in discounting Plaintiff's testimony based on effective treatment of symptoms and her activities. Thus, even if Plaintiff's testimony is not supported by the objective medical evidence, the ALJ cannot properly rely on that as the sole reason to discredit Plaintiff's testimony. *See Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony about debilitating mental and physical impairments) (citation omitted). Accordingly, the Court concludes that the ALJ erred in discounting Plaintiff's testimony. *See Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.").

## II.    NON-ACCEPTABLE MEDICAL SOURCES

### A.    Applicable Law

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (quoting *Molina*, 674 F.3d at 1111). LCSWs (licensed clinical social workers) and PMHNPs (psychiatric-mental health nurse practitioners) are considered "other sources," *see Delegans v. Berryhill*, 766 F. App'x 477, 480 (9th Cir. 2019) (treating an LCSW as an "other source"), and *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (treating a nurse practitioner as an "other source"), and are therefore not entitled to the same deference as "acceptable medical sources." *Molina*, 674 F.3d at 1111. "An ALJ may discount the opinion of an 'other source,' . . . if she provides 'reasons germane to each witness for doing so.'" *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (citation omitted).

### B.    Analysis

Plaintiff argues that the ALJ committed harmful error by failing to provide germane reasons for discounting the opinions of LCSW Sarah McDonald and PMHNP Amy Patrick. (Pl.'s Br. at 17-22.) The Court agrees.

On October 31, 2017, McDonald and Patrick completed a joint statement describing Plaintiff's functional capacity limitations. (Tr. 1161-67.) McDonald wrote that she treated Plaintiff every other week since August 3, 2016 in psychotherapy, individual skills training, and cognitive behavioral therapy, and Patrick wrote that she treated Plaintiff every month to six weeks since July 2015 for medication management. (Tr. 1161.) Both opined that Plaintiff was moderately limited in: (1) her ability to understand, remember, and carry out simple instructions, and (2) interacting appropriately with the public and co-workers. (Tr. 1164.) They also found Plaintiff was markedly limited in: (1) her "ability to make judgments on simple work-related decisions," (2) her ability to understand, remember, and carry out complex instructions, (3) her

"ability to make judgments on complex work-related decision," and (4) interacting appropriately with supervisors and changes in routine work settings. (Tr. 1164.)

Both noted that Plaintiff experiences anxiety attacks, and when she is around other people "she is not always able to perceive reality." (Tr. 1164-65.) They wrote that Plaintiff's impairments affected her ability to care for herself, which was exhibited by her "inability to complete ADL's at home including self care and lack of follow through." (Tr. 1165.) Overall, they wrote that Plaintiff "[c]onsistently presents with severe anxiety, depression, PTSD" and "has never successfully lived independently." (Tr. 1165.)

First, the ALJ rejected McDonald's findings because she found her October 31, 2017 statement was "wholly inconsistent with the totality of the evidence" including McDonald's own treatment notes from June 15, 2017 and June 19, 2017, and treatment notes from Laurel Hill Center from July 2015 through September 2017.[5] (Tr. 23.) Plaintiff argues the ALJ erred in her finding, arguing that McDonald's findings are "entirely consistent" with Plaintiff's treatment and records from Laurel Hill Center, which document Plaintiff's "need for significant support to secure stable housing and sustain . . . even part-time work." (Pl.'s Br. at 21.) The Court finds Plaintiff's argument persuasive.

Here, the seeming inconsistencies the ALJ cites are not supported by the record. For example, although McDonald wrote on June 15, 2017 that Plaintiff exhibited an "unremarkable mental status," the ALJ fails to acknowledge that in the same note McDonald wrote that: (1) Plaintiff "continues to experience depression and PTSD symptoms," (2) Plaintiff "continues to work on improving social skills and work life balance," and (3) that McDonald was working

---

[5] The ALJ incorrectly associates the October 31, 2017 Medical Source Statement of Ability to Do Work-Related Activities to McDonald alone, and fails to acknowledge that it was a joint statement provided by both McDonald and Patrick. However, this does not change the Court's evaluation of the ALJ's decision with respect to this medical opinion.

with Plaintiff to "fine tune" her goals so Plaintiff "can eventually not require assistance from

LHC (Laurel Hill Center)." (Tr. 709.) Additionally, as Plaintiff notes, and this Court agrees,

treatment records from Laurel Hill Center show Plaintiff continued to experience suicidal

ideation, odd thoughts, anxiety, difficulty leaving the home, difficulty in group settings, and a

need for regular support in order to live alone and manage her part-time work. (*See* Tr. 932, 973,

1056-57, 1067, 1069, 1073-74, 1077, 1079.) Thus, substantial evidence in the record does not

support the ALJ's finding that McDonald's conclusions were "wholly inconsistent" with the

treatment records. This was not a germane reason to discount her medical opinion.

The ALJ also discredited specific parts of McDonald's and Patrick's October 31, 2017

Medical Source Statement. (*See* Tr. 24.) Specifically, the ALJ gave "no weight" to McDonald's

opinion that Plaintiff would have "moderate and marked restrictions in dealing with simple work

and interacting appropriately with the public, supervisors, and coworkers," overall finding that

these limitations were inconsistent with Plaintiff's daily activities. (Tr. 24.) In support of her

findings, the ALJ noted that Plaintiff "earns a living as a personal care worker," which includes

"close interaction and simple tasks" like vacuuming, washing dishes, "laundry, talking to clients,

lifting no more than 15 pounds, working while standing, and working in individual homes

assigned by a supervisor." (Tr. 24.) As discussed above, the ALJ's reliance on Plaintiff's

reported activities was misplaced because the ALJ failed to account for the employer and

counseling support that Plaintiff received in order to perform these activities. Accordingly, the

ALJ likewise erred in discounting McDonald's and Patrick's opinions of Plaintiff's restrictions

based on Plaintiff's reported activities.[6]

---

[6] The ALJ also reviewed McDonald's opinion that Plaintiff "would be restricted with
respect to carrying out, remembering, and understanding complex instructions and work-related
decisions" and limited Plaintiff's RFC to reflect this. (*See* Tr. 24; *see also* Tr. 20, where the ALJ

In sum, the ALJ failed to provide germane reasons for rejecting McDonald's and Patrick's opinions.

## III.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (citation omitted).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

---

wrote that "[d]ue to mental impairments, [Plaintiff] can understand, remember and carry out only short and simple instructions; can only make simple work-related judgments and decisions.") Plaintiff takes no issue with this part of the ALJ's evaluation.

### B.    Analysis

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of reviewing doctor, Dr. William Weiss. (Pl.'s Br. at 4.) The Court agrees in part.

Dr. Weiss appeared as a medical expert during the November 9, 2017 ALJ hearing. (Tr. 49-58.) He testified that Plaintiff suffered from the following severe impairments: bipolar disorder, psychotic disorder, and posttraumatic stress disorder. (Tr. 49-50.) He also testified that Plaintiff used marijuana, and although he did not find it was a specific treatment for Plaintiff's severe impairments, he noted it seemed to calm Plaintiff and reduce her anxiety. (Tr. 21, 50.)

Based on his review of the medical record, Dr. Weiss found that Plaintiff was moderately limited in understanding, remembering, and applying information.[7] (Tr. 53.) He based his opinion on Plaintiff's ability to work nineteen and a half hours a week, which would require "at least a moderate level of information processing." (Tr. 53.) Next, Dr. Weiss found Plaintiff was markedly limited in interacting with others, noting that Plaintiff is "paranoid at times" and "also hears voices." (Tr. 53.) He noted Plaintiff's unusual behavior including "going topless on a bus" and "rubbing alcohol on a vehicle." (Tr. 54.)

Next, Dr. Weiss found Plaintiff was moderately limited in concentration, persistence, or maintaining pace, which he based on Plaintiff's ability to work nineteen and a half hours a week. (Tr. 55.) Finally, he found Plaintiff was markedly limited in her ability to adapt or manage one's self, noting that Plaintiff is "getting help on the job itself with a job coach." (Tr. 55.) Based on

---

[7] During the ALJ hearing, Dr. Weiss testified that he was unable to access Exhibit 16F. (Tr. 49.) Plaintiff argues this exhibit provides "[n]o evidence relevant to her mental disorders," as the exhibit merely "documents lab results, gynecological examinations, and an acute visit for sore throat, swelling, and tooth pain." (Pl.'s Br. at 5, citing Tr. 651-75.) Upon review, the Court confirms this exhibit contains the records Plaintiff describes, yet also notes that some of these records contain information detailing Plaintiff's continuing struggle with her mood disorder. (*See* Tr. 655, 660, 670, 672.) However, Dr. Weiss' inability to access these records does not affect the Court's evaluation of the ALJ's review of Dr. Weiss' medical opinion.

his evaluation, he testified that Plaintiff met the listing requirements at 12.04.[8] (Tr. 55.) Additionally, he opined that an increase in Plaintiff's work hours would likely result in "an exacerbation, particularly of the psychotic features." (Tr. 58.)

Dr. Weiss' medical opinion conflicts with the opinions of the non-examining state agency doctors, none of whom opined that Plaintiff would be markedly limited in her ability to interact with others or adapting. (*See* Tr. 72-74, 89-91.) Therefore, the ALJ was required to provide specific and legitimate reasons for discrediting his medical opinion. *Valentine*, 574 F.3d at 692.

The ALJ addressed Dr. Weiss' opinion in two parts. First, the ALJ assigned "little weight" to Dr. Weiss' opinion that Plaintiff was markedly limited in interacting with others and markedly limited in adapting or managing herself. (Tr. 24.) The ALJ found Dr. Weiss' findings were based on evidence that did not support his opinion, and that he "did not have the benefit of reviewing the claimant's work record with respect to her job as a home health care worker." (Tr. 24.)

With respect to the evidence Dr. Weiss cited to support his opinion, the ALJ fails to explain why the summary of Plaintiff's psychiatric history and chart notes from a group skills

---

[8] Listing 12.04 describes depressive, bipolar, and related disorders. A claimant may establish *per se* disability under Listing 12.04 if she provides medical documentation of the disorder and satisfies either B or C.

B: Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F): 1. Understand, remember or apply information (12.00E1). 2. Interact with others (see 12.00E2). 3. Concentrate, persist, or maintain pace (see 12.00E3). 4. Adapt or manage oneself (see 12.00E4). or

C: Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, ant there is evidence of both: 1. Medical treatment, mental health therapy, psychological support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00 G2c). 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04.

class titled "Recovery and Hearing Voices" do not support Dr. Weiss' opinion that Plaintiff was markedly limited in interacting with others and markedly limited in adapting or managing herself. (*See* Tr. 530, 785, 826.) Neither Plaintiff, nor the Commissioner, contests Plaintiff's history of psychiatric treatment for manic episodes she experienced during the summer of 2015, and this history of mental health symptoms, along with Plaintiff's continued participation in a group therapy program designed to manage her delusions, strengthen Dr. Weiss' opinion that Plaintiff is markedly limited in interacting with others and adapting or managing herself.

As to the ALJ's finding that Dr. Weiss was not aware of Plaintiff's work as a home health care worker, the Court acknowledges that Dr. Weiss testified he was unaware of Plaintiff's work as a home health care worker. (*See* Tr. 54.) When evaluating medical evidence, a number of factors are considered, including the consistency of the medical record to the record as a whole, and "the extent to which a medical source is familiar with the . . . information in [claimant's] case record." 20 C.F.R. §§416.927(c)(4); (6). It was reasonable for the ALJ to discredit this portion of Dr. Weiss' medical opinion based on his lack of familiarity with Plaintiff's specific work history. The ALJ did not err in assessing Dr. Weiss' finding that Plaintiff would be markedly limited in interacting with others and markedly limited in adapting or managing herself.[9]

Next, the ALJ assigned "little weight" to Dr. Weiss' opinion that an increase in Plaintiff's work hours would "likely result in an exacerbation of her psychotic symptoms consistent with the opinion of Sarah McDonald in Exhibit 18F." (Tr. 24.) In support of this decision, the ALJ

---

[9] Dr. Weiss found Plaintiff met Listing 12.04, which would require a finding that Plaintiff was *per se* disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04. However, as the ALJ reasonably discounted the portion of Dr. Weiss' opinion finding Plaintiff was markedly limited in interacting with others and markedly limited in her ability to adapt or manage herself, the Court finds the ALJ reasonably rejected Dr. Weiss' Listing 12.04 conclusion finding Plaintiff *per se* disabled as she did not satisfy the Listing 12.04 requirements.

found it was "not consistent with the totality of the evidence that demonstrates [Plaintiff] is able to sustain work activity and remain stable on medications while living independently." (Tr. 24.)

As discussed above, the ALJ's reliance on Plaintiff's ability to perform part-time work and live independently to discount Plaintiff's subjective symptom testimony is misplaced. Accordingly, the Court finds the ALJ also erred by discounting Dr. Weiss' medical opinions based on Plaintiff's activities. *See Dau v. Berryhill*, No. 15-1380, 2018 WL 3913266, at *6 (W.D. Wash. Aug. 16, 2018) ("The ALJ's second reason for rejecting Dr. Skelton's . . . opinion, that it was contradicted by Dau's daily activities, fails for the same reason her rejection of Dau's symptom testimony on this basis failed.").

Finally, Plaintiff takes issue with the ALJ's statement that "[a]lthough Dr. Weiss testified the claimant's marijuana use was not relevant with respect to her symptomatology, the record reflects that she was advised to quit smoking marijuana, which she did in April 2016, with no residual mental health effects." (Pl.'s Br. at 13, citing Tr. 24.) Plaintiff argues the record "does not support the ALJ's decision to reject Dr. Weiss' testimony that marijuana did not significantly impact [Plaintiff's] overall functioning or symptomatology," noting that her mental symptoms continued after she stopped using marijuana. (Pl.'s Br. at 16.) The record supports Plaintiff's position that her mental health symptoms continued even after she stopped using marijuana, as evidenced by her continued anxiety and mental health symptoms discussed above. The ALJ did not specifically describe the weight she gave to this portion of Dr. Weiss' opinion, but to the extent she rejected it, she failed to provide a specific and legitimate reason to do so.

In sum, the ALJ provided a specific and legitimate reason to discredit Dr. Weiss' medical opinion that Plaintiff was markedly limited in interacting with others and markedly limited in adapting and managing herself, but failed to provide legally sufficient reasons for discounting

Dr. Weiss' opinion that an increase in Plaintiff's work hours would likely increase her psychotic symptoms and regarding the effect of Plaintiff's marijuana use.

## IV.    LAY WITNESS TESTIMONY

### A.    Applicable Law

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). The ALJ cannot disregard such testimony without providing reasons that are germane to each witness. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 10-1432, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (citation omitted).

### B.    Analysis

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the lay witness testimony provided by her stepparents, Kirk H. and Lilly C. (Pl.'s Br. at 26-27.)

Kirk H. and Lilly C. completed a Third Party Function Report on October 3, 2015. (Tr. 219-26.) They wrote that Plaintiff is "delusional and hallucinates storylines that have nothing to do with reality." (Tr. 219.) They also noted she is "confrontational around other people," has "emotional outbursts," and has had "episodes of disturbing the peace." (Tr. 219.) They wrote that

she keeps herself "secluded from family and friends," "can no longer cook," "can't stay

focused," and "seems to be in another world." (Tr. 220-21.) She "keeps her contact short, 5-10

minutes for us or less," has "alienated everyone she has every associated with," and "has

confrontation issues." (Tr. 223-24.) They also stated she is "slow moving and complains of

pain." (Tr. 224.) Finally, they wrote that she was "emotionally disturbed and mentally

disturbed." (Tr. 225.)

The ALJ gave "little weight" to Plaintiff's stepparents' opinions. (Tr. 19.) The ALJ found

their statements concerning Plaintiff's functioning were inconsistent with Plaintiff's hearing

testimony and were "based on [Plaintiff's] level of functioning prior to the time she began

receiving consistent treatment with Zyprexa." (Tr. 19.) Plaintiff argues this reasoning is

problematic since the record shows Plaintiff "began receiving consistent treatment with Zyprexa

in July 2015" and "remained on Zyprexa by October 2015, when [Plaintiff's] step-parents

provided their written function report." (Pl.'s Br. at 27, citing Tr. 256-57, 456) (internal citations

omitted.) The Court finds Plaintiff's argument persuasive. Kirk H. and Lilly C. completed the

function report on October 3, 2015, months after Plaintiff began taking Zyprexa for her

symptoms. (*Cf.* Tr. 219-26, Third Party Function Report dated October 3, 2015; *see also* Tr. 256-

57, 456, medical records documenting Plaintiff's start of Zyprexa in July 2015.) The ALJ's

findings are not supported by the record, and therefore the ALJ failed to provide germane

reasons for discrediting the lay witness statements of Kirk H. and Lilly C.

V.    **REMEDY**

A.    **Applicable Law**

"Generally when a court of appeals reverses an administrative determination, 'the proper

course, except in rare circumstances, is to remand to the agency for additional investigation or

explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a

number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B.    Analysis

The Court finds that the credit-as-true standard is satisfied here and that remand for an award of benefits is warranted.

First, the Court finds that the record has been fully developed. It includes years of medical treatment notes, testimony from Plaintiff and her stepparents about her symptoms and limitations, and opinions from Dr. Weiss, McDonald, and Patrick describing Plaintiff's functional capacity. The ALJ and Plaintiff's counsel asked the VE hypothetical questions that addressed whether a worker with Plaintiff's limitations could sustain gainful employment, and the VE testified that Plaintiff's limitations would preclude work. (*See* Tr. 61, where the VE testified that a worker could not sustain competitive employment if she was "absent from work more than two days a month"; *see also* Tr. 1166, where McDonald and Patrick wrote Plaintiff

"would not be able to maintain her mental health if working 8 hours per day five days per week and she would likely decompensate in mental status" and Plaintiff's "current part time job schedule is not sustainable"; Tr. 58, where Dr. Weiss opined that an increase in her work hours would "result in an exacerbation . . . of [Plaintiff's] psychotic features.")

The Commissioner argues that further proceedings are warranted because there are "evidentiary conflicts, gaps, or ambiguities." (Def. Br. at 11.) In particular, the Commissioner argues that a "factual issue exists concerning the extent to which Plaintiff improved after her medication induced symptoms in the summer of 2015." (Def.'s Br. at 12.) The Court disagrees. Plaintiff's level of improvement is not in doubt as she is able to perform part-time work only with the assistance of her employer and community resources. Furthermore, Ninth Circuit precedent and the objectives of the credit-as-true standard foreclose any argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a "useful purpose":

> Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis.

*Garrison*, 759 F.3d at 1021; *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility.") Accordingly, the Court finds that Plaintiff meets the first part of the credit-as-true analysis.

Second, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony, Plaintiff's stepparents' testimony, McDonald's opinion, Patrick's opinion, and parts of Dr. Weiss' opinion. Accordingly, the Court finds that Plaintiff satisfies the second part of the credit-as-true analysis.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled because her impairments would cause her to exceed the customary tolerance for absences. Particularly, the improperly discredited evidence shows Plaintiff would only be capable of performing part-time work, and thus would miss more than two or more work days per month. (*See* Tr. 61, indicating that the VE testified that missing "two or more work days per month" would preclude gainful employment; Tr. 1166, McDonald's and Patrick's opinions that "[Plaintiff's] current part time job scheduled is not sustainable and we do not think she is capable of increasing this demand"; Tr. 58, Dr. Weiss opined that an increase in Plaintiff's work hours would likely result in "an exacerbation, particularly of the psychotic features.")

For these reasons, and because the Court does not have serious doubt about whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits.

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for an award of benefits.

**IT IS SO ORDERED.**

DATED this 27th day of May, 2020.

*Stacie F. Beckerman*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
STACIE F. BECKERMAN
United States Magistrate Judge